**Howard TREIBER, Paul S. Schulman, M.D., Ralph S. Jackson, John & Dianne Wisenbaker, Maynard King, Charles E. Morgan, A. George Ventro and Paul E. Bengston, Plaintiffs,**

v.

**Phyllis A. KATZ, Cigna Securities, Inc., ARP Timers I, Inc., American Residential Management, Inc., American Residential Properties, Inc., American Residential Securities, Inc., Defendants.**

No. 91–CV–70374–DT.

United States District Court,
E.D. Michigan, S.D.

June 5, 1992.

Beigel & Sandler, Ltd. by Ronald A. Schy, Herbert Beigel, Cary N. Goldberg, Chicago, Ill., for plaintiffs.

Barris, Sott, Denn & Driker by Eugene Driker, Andrew M. Zack, Detroit, Mich., Jenner & Block by J. Kevin McCall, Chicago, Ill., for defendant CIGNA Securities, Inc.

Bodman, Longley & Dahling by Robert M. Spence, Detroit, Mich., McManemin & Smith by J. Thomas Gilbert, Dallas, Tex., for defendants American Residential Management, Inc., American Residential Properties, Inc., American Residential Securities, Inc., ARP Timbers I, Inc.

Stephen H. Hartman, Dept. of Justice, Civil Div., Washington, D.C., for Dept. of Justice.

James R. Doty, General Counsel, Securities and Exchange Com'n, Washington, D.C., for Securities and Exchange Com'n.

## OPINION

GILMORE, District Judge.

Before the Court is Plaintiffs' Motion to Reinstate Section 10(b) claims dismissed by Order of this Court on September 25, 1991. At issue is the constitutionality of § 476 of the Federal Deposit Insurance Corporation Improvement Act, Pub.L. No. 102–242, 105 Stat. 2387 (1991).[1] The Court finds that § 476, which adds § 27A to the Securities and Exchange Act of 1934, is unconstitutional as applied to this case. Therefore, the Court denies Plaintiffs' Motion to Reinstate.

### I

On January 22, 1991, Plaintiffs filed a complaint alleging, *inter alia*, that Defendants' offer of limited partnerships in an apartment complex in Dallas, Texas, violated the Securities and Exchange Act of 1934, § 10(b) and Rule 10b–5. Defendants subsequently filed a motion to dismiss the § 10(b) claims, arguing that the claims were time-barred.[2]

Prior to June 19, 1991, the Sixth Circuit ruled that the proper statute of limitation to apply to § 10(b) claims was the limitation period provided by the most closely analogous state law. *IDS Progressive Fund, Inc. v. First of Michigan Corp.*, 533 F.2d 340 (6th Cir.1976). The most closely analogous Michigan law, M.C.L.A. 600.-5813, provides for a six-year statute of limitation for fraud claims. Plaintiffs' allegations of fraud involved securities purchased in the latter months of 1985 and in

---

1. 28 U.S.C. § 2403 and Fed.R.Civ.P. 24(c) both mandate in cases challenging the constitutionality of a federal statute that the parties or the court notify the United States Attorney General of the pendency of the action. The Attorney General has been notified and has submitted a Statement of Interest on behalf of the United States and the Securities and Exchange Commission.

2. Defendants also argued that the § 10(b) claims should be dismissed pursuant to Fed.

R.Civ.P. 12(b)(6) for failure to state a claim and pursuant to Fed.R.Civ.P. 9(b) for failure to allege fraud with sufficient particularity. However, the Court did not address these arguments, having determined that the claims were time-barred. Similarly, the present decision addresses only the reinstatement of claims dismissed as time-barred; the Court expresses no opinion as to the merits of Defendants' other asserted grounds for dismissal.

early 1986. Thus, the filing of Plaintiffs' claims on January 22, 1991 was within the six-year statute of limitation.

However, on June 20, 1991, the Supreme Court decided *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* — U.S. —, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), which established a uniform one-year/three-year statute of limitation for actions brought pursuant to § 10(b). *Lampf* provided that litigation instituted pursuant to § 10(b) had to be commenced within one year after the discovery of the facts constituting the violation and in no event more than three years after the violation occurred. *Id.* at —, 111 S.Ct. at 2775. Moreover, *James B. Beam Distilling Co. v. Georgia,* — U.S. —, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), decided the same day as *Lampf,* clearly indicated that the statute of limitation established in *Lampf* was to be applied retroactively to pending suits. *Id.* at —, 111 S.Ct. at 2440.

In light of the ruling in *Lampf,* this Court entered an Order on September 25, 1991, dismissing Plaintiffs' § 10(b) claims as time-barred. In addition, the Court dismissed all the other federal claims, declined to exercise pendant jurisdiction over the state law claims, and dismissed the case in its entirety. Plaintiffs did not appeal the Court's ruling.

Then, on November 27, 1991, Congress passed the Comprehensive Deposit Insurance Corporation Improvement Act of 1991, Pub.L. No. 102–242, 105 Stat. 2387 (1991). The Act was signed into law on December 19, 1991. Section 476 of that Act added § 27A to the Securities Exchange Act of 1934, to be codified at 15 U.S.C. § 78aa–1. In an apparent attempt to counteract the retroactive application of *Lampf,* § 27A provides:

(a) EFFECT ON PENDING CAUSES OF ACTION. The limitation period for any private civil action implied under section 10(b) of this Act that was commenced on or before June 19, 1991 [the day before *Lampf* was decided] shall be the limitation period provided by the laws applicable in the jurisdiction, including

principles of retroactivity, as such laws existed on June 19, 1991.

(b) EFFECT ON DISMISSED CAUSES OF ACTION. Any private civil action implied under section 10(b) of this Act that was commenced on or before June 19, 1991—

(1) which was dismissed as time barred subsequent to June 19, 1991 and

(2) which would have been timely filed under the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991 shall be reinstated on motion by the plaintiff not later than 60 days after the date of enactment of this section.

Citing the authority of § 27A, Plaintiffs filed the instant Motion to Reinstate Section 10(b) Claims on January 28, 1992. The Court now considers whether § 27A applies to Plaintiffs' claims and, if so, whether § 27A is constitutional.

## II

### A. *Applicability of § 27A*

■ All parties agree that Plaintiffs' § 10(b) claims satisfy three of the four requirements for reinstatement provided in § 27A. Plaintiffs' § 10(b) claims were filed prior to, and dismissed as time-barred subsequent to the critical date of June 19, 1991. Furthermore, the Motion to Reinstate was filed within 60 days of the enactment of § 27A.

However, Defendants contend that the majority of Plaintiffs' claims do not meet the fourth requirement of § 27A because they were not timely filed under the limitation period applicable prior to *Lampf.* Defendants state that the Michigan statute of limitation is applicable only to the two Plaintiffs who reside in Michigan. The other seven Plaintiffs are governed by shorter limitation periods that bar their § 10(b) claims.

Defendants cite the Michigan borrowing statute, M.C.L.A. 600.5861, which provides:

An action based upon a cause of action accruing without this state shall not be commenced after the expiration of the

statute of limitations of ... the place without this state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of this state the statute of limitations of this state shall apply.

Employing this statute, Defendants assert that the proper limitation period for the claims of the seven Plaintiffs who are not Michigan residents is determined according to the law of the circuit in which the alleged securities fraud occurred. Defendants maintain that the statute of limitation would then bar those Plaintiffs' § 10(b) claims. Thus, seven of the nine Plaintiffs fail to meet the requirement of § 27A that their claims be timely filed under the law as it existed prior to June 19, 1991.

The Court does not agree with Defendants' reasoning. In essence, Defendants are arguing that Michigan's borrowing statute requires a federal district court to look to case law of another federal circuit to determine what statute of limitation applies to a federal claim. Such a position is untenable. In federal claims cases, federal courts resort to state statutes of limitation primarily as a matter of expedience, not as a matter of mandatory law. *Champion Int'l Corp. v. United Paperworkers Int'l Union,* 779 F.2d 328 (6th Cir.1985). Case law directing federal courts to look to analogous state law to determine the statute of limitation period for a federal claim does not require the court to adopt the forum state's borrowing statute in order to discern the proper statute of limitation.

*Id.*[3] In § 10(b) claims asserted prior to the decision in *Lampf,* federal courts in this circuit were to look to state law only to ascertain the analogous state statute of limitation; in every other respect, federal law applied.

The law of the Sixth Circuit as of June 19, 1991, dictated that this Court apply Michigan's six-year statute of limitation to all nine of the Plaintiffs' § 10(b) claims. Thus all Plaintiffs have met the requirements for reinstatement as provided in § 27A.

### B. Constitutionality of § 27A

Having determined that § 27A is applicable to Plaintiffs' dismissed claims, the Court now turns to consider the constitutionality of the legislation. At the outset of this inquiry, the Court notes that a host of other district courts have considered the constitutionality of § 27A without any consensus having emerged.[4]

The Court is mindful that legislation is to be construed as constitutional if such construction is fairly possible. *Communications Workers of America v. Beck,* 487 U.S. 735, 762, 108 S.Ct. 2641, 2657, 101 L.Ed.2d 634 (1988). However, the Court may not concoct a disingenuous construction so as to manufacture constitutionality. *United States v. Locke,* 471 U.S. 84, 96, 105 S.Ct. 1785, 1793, 85 L.Ed.2d 64 (1985).

1.

Section 27A(a) provides that the limitation period for any pending § 10(b) claim that was filed before the *Lampf* decision be governed by the pre-*Lampf* limita-

---

3. Although *Champion, supra,* concerned the statute of limitation for claims brought pursuant to § 301 of the Labor Management Relations Act, its reasoning is equally applicable to § 10(b) claims. *See In Re Rospatch Secur. Litigation,* 760 F.Supp. 1239 (W.D.Mich.1991).

4. *See, e.g., Brown v. Hutton Group,* 795 F.Supp. 1307, (S.D.N.Y.1992) (finding § 27A constitutional); *Axel Johnson, Inc. v. Arthur Andersen & Co.,* 790 F.Supp. 476, (S.D.N.Y.1992) (same); *Venturtech II v. Deloitte Haskins & Sells,* 790 F.Supp. 576 (E.D.N.C.1992) (same); *Melridge, Inc. Secur. Litigation,* No. 87-1426-JU, 1992 WL 58265, 1992 U.S. Dist. LEXIS 3477 (D.Or. March 20, 1992) (same); *TBG Inc. v. Bendis,* No. 89-2423-0, 1992 WL 80622, 1992 U.S. Dist. LEXIS 5940, (D.Kan. March 5, 1992) (same); *Ayers v.*

*Sutliffe,* No. 1-90-650, 1992 WL 100132, 1992 U.S. Dist. LEXIS 3219 (S.D.Ohio February 11, 1992) (same); *Bankard v. First Carolina Communications, Inc.,* No. 89-8571, 1992 WL 3694, 1992 U.S. Dist. LEXIS 53 (N.D.Ill. January 3, 1992) (same); *Plaut v. Spendthrift Farm, Inc.,* 789 F.Supp. 231 (E.D.Ky.1992) (finding § 27A unconstitutional); *In re Brichard Secur. Litigation,* 788 F.Supp. 1098 (N.D.Cal.1992) (same); *Bank of Denver v. Southeastern Capital Group, Inc.,* 789 F.Supp. 1092 (D.Colo.1992) (same); *Johnston v. CIGNA Corp.,* 789 F.Supp. 1098 (D.Colo.1992) (same); *TGX Corp. v. Simmons,* 786 F.Supp. 587 (E.D.La.1992) (same); *Sims v. Shearson Lehman Brothers, Inc.,* No. CA3-90-0252-P (N.D.Tx. January 29, 1992) (same).

tion period established for that jurisdiction, rather than the retroactive limitation period described in *Lampf.* Defendants argue that this is unconstitutional because Congress cannot reinstate a cause of action after the period of repose for that action has run. Defendants cite *William Danzer & Co. v. Gulf & S.I.R. Co.,* 268 U.S. 633, 45 S.Ct. 612, 69 L.Ed. 1126 (1925) to support this assertion. In *Danzer,* the Supreme Court determined that legislation extending a limitation period could effect a taking if it retroactively creates liability. *Id.* at 637, 45 S.Ct. at 613.

However, the Court finds that *Danzer* is not controlling. *Danzer* involved a case where a period of repose had passed before the plaintiff filed suit. Then, after the limitation period was enlarged by legislation, the plaintiff commenced its action.

The present case is distinguishable in that Plaintiffs' complaint was timely filed under the six-year statute of limitation applicable at the date of filing. Then, after the *Lampf* decision, the one-year/three-year limitation period became applicable. The subsequent passage of § 27A(a) did not lengthen the limitation period announced in *Lampf;* the legislation merely prevented the retroactive application of the shorter limitation period to pending actions and reestablished the applicability of the limitation period in effect at the time of filing.

These distinguishing circumstances in the present case are significant. The Court in *Danzer* addressed a situation where a lapse of time destroyed liability and where the retroactive application of subsequent legislation changed the limitation period so as to *recreate liability.* In contrast, when Congress enacted § 27A(a), it did not confer on Plaintiffs a new right or subject Defendants to a new liability. Rather it merely reinstated liability that was already extant but had been barred by the retroactive application of a new limitation period. Congress did not lengthen a period of repose so as to create liability where none existed; Congress merely prevented the retroactive application of a new limitation period which threatened to bar already ex-

isting liability in pending suits. Moreover, Defendants did not acquire a vested right to immunity from § 10(b) suits merely because *Lampf* dictated the application of a different, shorter limitation period. *See Chase Secur. Corp. v. Donaldson,* 325 U.S. 304, 316, 65 S.Ct. 1137, 1143, 89 L.Ed. 1628 (1945). In sum, the change in law effected by § 27A(a) did not create new liability in pending suits and did not deprive litigants of any right so as to trigger takings analysis.

### 2

■ Defendants also maintain that § 27A(a) violates the constitutional doctrine of separation of powers because it directs courts to decide specific cases in a particular way. Indeed, *United States v. Klein,* 80 U.S. (13 Wall.) 128, 20 L.Ed. 519 (1871), stands for the proposition that legislation prescribing a rule for a decision in a certain way, without changing the underlying law, violates the constitutional doctrine of separation of powers. *Id.* at 146–47. However, the Court finds that § 27A(a) does not prescribe specific rules for deciding a case in a particular way.

In *Robertson v. Seattle Audubon Soc.,* —— U.S. ——, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992), the Supreme Court determined that a law directing the use of certain statutory requirements to two cases identified by name and caption number did not direct "particular findings of fact or applications of law, old or new, to fact." *Id.* at ——, 112 S.Ct. at 1413. Similarly, § 27A(a) directs the courts to apply certain statutory provisions to pending cases but does not compel factual findings in those cases. Admittedly, § 27A(a) may change the eventual outcome of pending cases, but because it does not direct courts to make particular findings in those cases, it does not run afoul of the constitutional limitation described in *Klein.*

The separation of powers question presented in this case is analogous to that the Supreme Court considered in *United States v. Sioux Nation of Indians,* 448 U.S. 371, 100 S.Ct. 2716, 65 L.Ed.2d 844 (1980). In *Sioux Nation,* the Court upheld the constitutionality of a statute withdraw-

ing a *res judicata* defense in a case involving government compensation for Indian lands. The Court reasoned:

> [T]he proviso at issue in *Klein* had attempted "to prescribe a rule for the decision of a cause in a particular way." The amendment at issue in the present case ... waived the defense of res judicata so that a legal claim could be resolved on the merits. Congress made no effort ... to control the Court of Claims' ultimate decision of that claim.

*Id.* at 405–06, 100 S.Ct. at 2736 (citations omitted). Similarly, § 27A(a) seeks to remove a defense created by the retroactive application of a limitation period so that § 10(b) claims can be decided on their merits. The legislation does not prescribe the outcome of those legal claims and does not offend the doctrine of separation of powers announced in *Klein*.

### 3

▮▮ Defendants also assert that § 27A(b) violates the separation of powers and due process rights because it seeks to reinstate claims after final judgment has been rendered. The Court agrees that Congress has stepped outside its constitutional role in directing courts to reinstate cases after final adjudication.

It is indisputable that, if supported by a rational legislative purpose, Congress can lengthen or wholly abolish a statute of limitation for a cause of action and make that change retroactively applicable to pending cases. *United States v. Sperry Corp.*, 493 U.S. 52, 64, 110 S.Ct. 387, 396, 107 L.Ed.2d 290 (1989); *International Union of Electrical, Radio & Machine Workers v. Robbins & Myers, Inc.*, 429 U.S. 229, 243–44, 97 S.Ct. 441, 450–51, 50 L.Ed.2d 427 (1976); *Chase, supra* 325 U.S. at 315, 65 S.Ct. at 1142; *Campbell v. Holt*, 115 U.S. 620, 628, 6 S.Ct. 209, 213, 29 L.Ed. 483 (1885); *United States v. The Schooner Peggy*, 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801). However, by its terms § 27A(b) seeks to retroactively change the statute of limitation for cases that are no longer pending before the courts. Section 27A(b) specifically addresses cases which have been dismissed as time-barred and directs that these cases be reinstated. Thus, § 27A(b) purports to reopen cases in which courts have rendered final judgments.

In seeking to reverse prior final judgments, § 27A(b) treads upon long-standing Supreme Court doctrine setting the constitutional boundaries of permissible legislative intervention into judicial decisions. As the Supreme Court provided in *McCullough v. Virginia*, 172 U.S. 102, 19 S.Ct. 134, 43 L.Ed. 382 (1898):

> It is not within the power of the legislature to take away rights which have been once vested by judgment. Legislation may act on subsequent proceedings, may abate actions pending, *but when those actions have passed into judgment the power of the legislature to disturb the rights created thereby ceases.*

*Id.* at 123–24, 19 S.Ct. at 142 (emphasis added). Numerous prior and subsequent Supreme Court cases support this proposition, indicating that "the private right of parties which have been vested by the judgment of a court cannot be taken away by subsequent legislation, but must be thereafter enforced by the court regardless of such legislation." *Hodges v. Snyder*, 261 U.S. 600, 603, 43 S.Ct. 435, 436, 67 L.Ed. 819 (1923); *accord Pennsylvania v. Wheeling & Belmont Bridge Co.*, 59 U.S. (18 How.) 421, 431, 15 L.Ed. 435 (1856) (stating that "especially as it respects adjudication upon the private rights of parties ... [an] act of congress cannot have the effect and operation to annul the judgment of the court already rendered, or the rights determined thereby.... When they have passed into judgment the right becomes absolute, and it is the duty of the court to enforce it").

Several recent circuit court decisions discuss the twofold nature of this "vested rights" doctrine. *See, e.g., Georgia Ass'n of Retarded Citizens v. McDaniel*, 855 F.2d 805, 810 (11th Cir.1988), *cert. denied*, 490 U.S. 1090, 109 S.Ct. 2431, 104 L.Ed.2d 988 (1989); *Tonya K. v. Board of Educ.*, 847 F.2d 1243, 1247–48 (7th Cir.1988); *Taxpayers for Animas–La Plata Referendum v. Animas–La Plata Water Conservancy Dist.*, 739 F.2d 1472, 1477 (10th Cir.1984);

*Daylo v. Administrator of Veterans' Affairs,* 501 F.2d 811, 816 (D.C.Cir.1974). The vested rights doctrine has a due process component premised upon the fact that once rights are fixed by judgment, they are a form of property over which the legislature has no greater power than it has over any other form of property. The doctrine also has a separation of powers component derived from the constitutional limitation on legislative review of judicial action, "a regime ... subversive of the judicial branch of government." *Daylo, supra* at 816.

However, these circuit court rulings did not reach the question of whether the vested rights doctrine renders unconstitutional retroactive legislation which reverses finally adjudicated cases. In *Georgia* and *Daylo,* the courts determined that congressional intent to annul prior final judgments through the retroactive application of a statute must be clearly expressed. The courts believed such clear expression was necessary to justify a construction that would pose serious constitutional problems. Both courts concluded that such clear expression was not evident in the legislation at issue. *Daylo, supra* at 823; *Georgia, supra* at 809. In *Tonya K* and *Animas–La Plata,* the courts avoided the constitutional question of whether retroactive legislation could reverse a final adjudication by determining that there had been no previous final judgment. *Tonya K, supra* at 1248; *Animas–La Plata, supra* at 1476–77.

In contrast to the legislation considered in the above cited circuit court cases, Congress expressed a clear intent in § 27A(b) to reinstate claims in cases which were previously adjudicated and dismissed. Furthermore, the Court has entered its final judgment dismissing the case.[5] Thus this Court must address the question of whether Congress exceeded constitutional limits

upon legislative power in directing the reinstatement of Plaintiffs' § 10(b) claims after final judgment was rendered.

Plaintiffs argue that because no party can claim a vested right in a particular statute of limitations, Defendants cannot have obtained a vested right in this Court's dismissal of Plaintiffs' claim on statute of limitation grounds. Similarly, in its Statement of Interest, the United States asserts that Defendants have not obtained vested rights in the dismissal of Plaintiffs' claims because the dismissal was not on the merits.

The Court agrees that a party has no vested right in the maintenance of a particular statute of limitation. As the Supreme Court stated in *Chase, supra:*

> Statutes of limitation ... represent a public policy about the privilege to litigate. Their shelter has never been regarded as what now is called a "fundamental" right or what used to be called a "natural" right of the individual. He may, of course, have the protection of the policy while it exists, but the history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control.

*Id.* 325 U.S. at 314, 65 S.Ct. at 1142 (citations omitted). If supported by a rational legislative purpose, Congress can change a limitation period so as to destroy accrued causes of action without interfering with vested rights. *See Sperry, supra* 493 U.S. at 64, 110 S.Ct. at 396; *Robbins, supra* 429 U.S. at 243–44, 97 S.Ct. at 450–51; *Chase, supra* 325 U.S. at 315, 65 S.Ct. at 1142. However, if the retroactive legislation purports to reverse previous final judgments, the case is significantly different. Indeed, in *Chase,* where the Court upheld as constitutional retroactive legislation altering a statute of limitation, the Court made it

---

**5.** The Court finds meritless Plaintiffs' assertion that the September 25, 1991 Order dismissing Plaintiffs' complaint in its entirety was not a final judgment. Plaintiffs maintain that the Order was not final and appealable because it provided for reconsideration of the dismissal if the Supreme Court granted rehearing and reversed its decision in *Lampf.* However, the

statement that the Court would reconsider its dismissal if *Lampf* were reversed does little more than state the obvious; it does not affect the finality of the judgment. Moreover, the Supreme Court has not reversed *Lampf* and the period for reconsideration of this Court's Order had long since passed by the time § 27A was enacted.

clear that this was not a case in which "a defendant's statutory immunity from suit had been fully adjudged so that legislative action deprived it of a final judgment in its favor." *Chase, supra,* at 310, 65 S.Ct. at 1140.

Even though Defendants do not have vested rights in a particular statute of limitation, Defendants *do* have vested rights in this Court's judgment dismissing Plaintiffs' § 10(b) claims. Once a lawsuit is finally adjudicated, the rights become vested and Congress cannot constitutionally divest them. *Hodges, supra; McCullough, supra; Wheeling & Belmont, supra.*[6] Indeed, granting Congress the power to set aside final judgments would transform judicial rulings into advisory opinions. 13 *Wright, Miller & Cooper, Federal Practice and Procedure,* § 3529.1, at 302 (1984).

The United States, in its Statement of Interest, implies that because § 27A(b) merely withdraws a dismissal on statute of limitations grounds, and does not alter or prescribe a substantive decision on the merits, the legislation does not interfere with vested rights. Although the United States acknowledges that the Supreme Court has yet to decide whether a dismissal on statute of limitation grounds gives rise to vested rights, the United States cites *Sioux Nation, supra,* for the proposition that only statutes that reverse final judgments rendered on the merits constitute impermissible interference with judicial function.

The Court rejects this overly broad reading of *Sioux Nation.* In *Sioux Nation,* the Court upheld the constitutionality of a statute withdrawing a *res judicata* defense on government liability to pay compensation for the taking of Indian lands. The Court considered whether the legislation violated the separation of powers because it disturbed the finality of a Court of Claims' judgment that the takings claims were barred by the *res judicata* effect of a

1942 Court of Claims judgment finding the government was not liable. Although the Supreme Court concluded that the legislation did not violate the separation of powers, it reached this conclusion based upon narrow grounds not applicable to § 27A(b).

The Supreme Court determined that the legislation in *Sioux Nation* did not bring into question the finality of the Court of Claims' earlier judgments, but only acknowledged the government's obligation to pay compensation for takings of property. In this manner, *Sioux Nation* is limited to the line of cases addressing Congress' broad power, pursuant to § 8, Article I of the U.S. Constitution, to recognize and pay the nation's debts. *See Pope v. United States,* 323 U.S. 1, 9–10, 65 S.Ct. 16, 21–22, 89 L.Ed. 3 (1944); *United States v. Realty Co.,* 163 U.S. 427, 443–44, 16 S.Ct. 1120, 1126–27, 41 L.Ed. 215 (1896).

This narrow exception to the line of cases limiting legislative interference with final adjudication is not applicable to § 27A(b). The present legislation does not seek to waive a defense enuring to the government's benefit; Section 27A(b) purports to waive a defense enjoyed by private litigants. Furthermore, Congress' authority in enacting § 27A(b) is not grounded in its power to pay the nation's debts. Indeed, the legislation is wholly outside of the legislative authority granted to Congress.

In addition, even if the Court were to accept the United States' premise that only judgments on the merits can vest rights, this argument still does not help Plaintiffs. The Sixth Circuit has held that "absent language providing that a judgment is not on the merits, a judgment dismissing an action on statute of limitation grounds operates as an adjudication of the merits under Rule 41(b), even where the dismissal is pursuant to Rule 12(b)(6), Fed.R.Civ.P." *Cemer v. Marathon Oil Co.,* 583 F.2d 830, 832 (6th Cir.1978). Thus, because this Court's dismissal order lacked language

---

6. However, this limitation does not prevent Congress from regulating *future action* which may be based upon rights acquired through final judgments. *See Fleming v. Rhodes,* 331 U.S. 100, 107, 67 S.Ct. 1140, 1144, 91 L.Ed. 1368 (1947). Legislation which readjusts the rights

and burdens of individuals is not unlawful solely because it upsets otherwise settled expectations, even if those expectations are grounded in valid judgments. *See Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 16, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976).

providing that the judgment was not on the merits, the order operates as an adjudication on the merits.

Therefore, the Court concludes that § 27A(b) is unconstitutional as applied to Plaintiffs' § 10(b) claims because it seeks to reinstate a case in which final judgment has already been entered. Such a final judgment of dismissal cannot, consistent with the Constitution, be reinstated by retroactive legislation.[7]

### III

In summary, the Court finds that § 27A(a) is constitutional as it applies only to pending cases. However, the Court finds that § 27A(b), to the extent that it seeks to reinstate § 10(b) claims that have already been subject to final adjudication, is unconstitutional. The Court further finds that its Order of September 25, 1991, dismissing Plaintiffs' § 10(b) claims as time-barred, is a final adjudication. Therefore, the Court concludes that § 27A is unconstitutional as applied to this case and Plaintiffs' Motion to Reinstate Section 10(b) claims on that basis must be denied.

IT IS SO ORDERED.

---

**7.** It has been suggested that Fed.R.Civ.P. 60(b)(6) solves the constitutional problem in reinstating Plaintiffs' § 10(b) claims by permitting the Court to relieve a party from final judgment under exceptional circumstances, such as where there is a retroactive change in statutory law. However, the Court's authority to set aside its own final judgment when justice so requires is profoundly different from a legislative decree requiring courts to set aside final judgments. To state that these propositions are of equivalent constitutional import is to reveal the inherently flawed nature of this argument.